# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRIAN CARTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 10-CV-0099-CVE-PJC |
| | ) |
| POP RESTAURANTS, L.L.C., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court is defendant's Motion for Partial Summary Judgment and Brief in Support (Dkt. # 36). Defendant Pop Restaurants, L.L.C. (Pop) seeks summary judgment on plaintiff's claims of retaliation under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (FLSA), and the Oklahoma Workers Compensation Act, OKLA. STAT. tit. 85, § 5 (OWCA).[1] Plaintiff responds that a genuine issue of material fact precludes summary judgment on his OWCA retaliation claim, but his response does not address defendant's arguments as to his claim of FLSA retaliation.

## I.

Brian Carter worked at a Pop restaurant located at Peoria Avenue and Pine Street in Tulsa, Oklahoma, and he occasionally worked at other Pop restaurants in the nearby suburbs of Bixby and Broken Arrow, Oklahoma. Dkt. # 40-1, at 7. Carter was primarily assigned to the Tulsa location for about one year to a year and half, and his employment began in March 2008. Dkt. # 36-1, at 5; Dkt. # 40-1, at 2. Carter believed that he was not being paid for all of the hours that he worked, and he made complaints to Ann Bailey, the supervisor of the Tulsa location, Niki Smith, the supervisor

---

[1] Defendant does not seek summary judgment as to plaintiff's claim for unpaid wages under the FLSA.

of the Bixby location, and Louis Waller, the district manager. Dkt. # 36-1, at 8-10; Dkt. # 36-2, at 8; Dkt. # 36-3. Carter was later assigned to the Broken Arrow restaurant as his primary workplace and he worked at the Broken Arrow restaurant full-time for about two and a half months before his employment was terminated. Dkt. # 40-1, at 3. Carter did not raise any concerns about pay to the supervisor of the Broken Arrow location, John Talmez. Dkt. # 36-1, at 11.

In April 2009, plaintiff fell and injured his back while working at the Tulsa location, and states that Bailey refused to given him an accident report form. Dkt. # 40-1, at 10, 15. Bailey later told Waller that Carter slipped and fell in the walk-in cooler, but Bailey did not submit an incident report. Dkt. # 40-5, at 7-8. Carter sought medical treatment and a physician prescribed anti-inflammatory medication and low-dosage pain pills. Dkt. # 42-2, at 3. Carter missed one day of work but did not file a worker's compensation claim. Id. at 3. On December 13, 2009, Carter fell at work and injured his back at the Broken Arrow location, and he was taken to an emergency room for treatment. Dkt. # 36, at 12-13. The emergency room physician gave Carter a note stating that Carter should not return to work for seven days. Id. at 13. Carter delivered that note to Talmez at the Broken Arrow location and did not resume working. Id. at 15. Carter made a second trip to the emergency room, but he does not recall the exact date of this second trip. Carter testified in his deposition that his second trip to the emergency room occurred during the seven day period following his first trip to the emergency room. Dkt. # 40-1, at 22. Carter called Talmez the day after his second trip to the emergency room, and Talmez immediately terminated Carter's employment. According to Carter, Talmez told Carter that "I don't f***ing need you," and Talmez immediately ended the conversation. Id. at 23. Pop's records show that Carter's employment was officially terminated on December 23, 2009, and the reason for termination is listed as involuntary

2

termination for excessive absenteeism. Dkt. # 36-4. Carter had not filed a worker's compensation claim at the time of his termination.

Pop has an employee handbook and the handbook addresses the issue of tardiness and absenteeism. The handbook states that an "absence from work without properly notifying your supervisor, store manager, or the personnel administrator will be treated as a voluntary resignation. (This is treated as a 'No Call -- No Show')." Dkt. # 40-4, at 2. Excessive absenteeism or tardiness is an alternative basis to terminate an employee, but this would be considered an involuntary termination of an employee. Pop "generally" considers three absences within a 90 period "or a consistent pattern of absence in a short period of time" to be excessive. Id. However, the handbook also states that other factors may be considered when determining the appropriate level of discipline. Id. Smith testified as a corporate representative of Pop and states that she has fired about ten employees for excessive tardiness or absenteeism. She testified in her deposition that she follows the handbook policy regarding absenteeism when terminating a person's employment. Dkt. # 40-3, at 6. Waller testified that a store manager has the authority to terminate an employee for even one absence, and the disciplinary procedure in the employee handbook is discretionary. Dkt. # 36-2, at 7.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party

3

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Defendant seeks summary judgment on plaintiff's claims of FLSA retaliation and workers' compensation retaliation. Plaintiff argues that the short time period between his medical treatment and termination and defendant's failure to comply with its employee handbook show that he was fired in retaliation for the risk that he would exercise his rights under the OWCA, but plaintiff offers

4

no response to defendant's argument that summary judgment is appropriate on his FLSA retaliation claim.

**A.**

Defendant argues that the decision-maker who terminated plaintiff's employment, Talmez, had no notice of plaintiff's wage complaints and plaintiff cannot establish any causal connection between his protected activity and his termination. Plaintiff does not respond to defendant's motion for summary judgment on this issue, and offers no argument in support of his FLSA retaliation claim.

The FLSA expressly prohibits an employer from retaliating against an employee for reporting alleged violations:

> it shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding . . .

29 U.S.C. § 215(a)(3). The Tenth Circuit has held that informal complaints are also sufficient to trigger the protections of § 215. Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1394 (10th Cir. 1997). Claims of retaliation under the FLSA are analyzed under the burden-shifting analysis of McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). Richmond v. Oneok, Inc., 120 F.3d 205, 208 (10th Cir. 1997). To make a prima facie case of FLSA retaliation, a plaintiff must show that "(1) [he] engaged in protected activity under the FLSA, (2) [he] suffered an adverse employment action contemporaneous with or subsequent to the protected activity, and (3) a causal connection between the protected activity and the adverse employment action." Pacheco v. Whiting Farms, Inc., 365 F.3d 1199, 1206 (10th Cir. 2004). If the plaintiff can establish a prima facie case of FLSA retaliation, the burden shifts to the employer to come forward with a legitimate, non-discriminatory

reason for terminating plaintiff's employment. Id. at 1206-07. If the employer meets its burden of production, the burden shifts to the plaintiff to show that a genuine issue of material fact exists "regarding whether the employer's proffered reason is unworthy of credence. Id. at 1207.

Even though plaintiff has failed to respond to defendant's motion for summary judgment as to his FLSA retaliation claim, the Court must examine the record to determine if summary judgment is appropriate on this claim. Reed v. Bennett, 312 F.3d 1190, 1195 (10th Cir. 2002) ("a party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party"). There is no dispute that plaintiff engaged in protected activity or that he suffered an adverse employment action, and plaintiff can establish these elements of a prima facie case of FLSA retaliation. Defendant argues that plaintiff cannot establish the final element of a prima facie case of FLSA retaliation, because plaintiff has no evidence showing a causal connection between his wage complaints and his termination. To establish a causal connection a claim of FLSA retaliation, a plaintiff "must show that the individual who took adverse action against him knew of the employee's protected activity." Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 1993); see also Greenlee v. Southwest Health Systems, Inc., 2007 WL 2320544 (D. Colo. Aug. 10, 2007) ("Obviously, where the person who takes adverse action against a plaintiff was unaware of the plaintiff's protected conduct, causation is lacking.").

Plaintiff has produced no evidence that would support an inference that Talmez was aware of plaintiff's protected conduct, and there is no dispute that Talmez was the sole decision-maker responsible for terminating plaintiff's employment. Plaintiff's deposition testimony establishes that he called Talmez to notify him that plaintiff would not be attending work, and Talmez immediately terminated plaintiff's employment. Talmez, as a store manager, had the authority to fire an

6

employee without obtaining approval from a district manager, and plaintiff does not dispute this fact. Dkt. # 36-2, at 4; Dkt. # 40, at 3. Plaintiff also admits that he did not make any complaints about unpaid wages to Talmez, and there is no circumstantial evidence suggesting that Talmez was aware of plaintiff's complaints. Dkt. # 40, at 2. Thus, there is no evidence that the person responsible for firing plaintiff had any knowledge of plaintiff's protected activity and this is fatal to plaintiff's FLSA retaliation claim. See Zokari v. Gates, 561 F.3d 1076, 1081 (10th Cir. 2009); Jones v. U.P.S., Inc., 502 F.3d 1176, 1195 (10th Cir. 2007). Plaintiff cannot establish each element of a prima facie case of FLSA retaliation and defendant is entitled to summary judgment on this claim.

**B.**

Defendant argues that there is no evidence that would support an inference that plaintiff's employment was terminated in retaliation for making a workers' compensation claim or exercising his statutory rights. Defendant asserts that the temporal proximity between plaintiff's injury and his termination is insufficient, standing alone, to show that plaintiff's employment was terminated due to the possibility that he might file a workers' compensation claim against defendant. Plaintiff responds defendant's failure to provide a legitimate explanation for his termination, combined with the temporal proximity between plaintiff's injury and his termination, supports an inference that defendant terminated his employment to prevent plaintiff from filing a workers' compensation claim after plaintiff suffered an on-the-job injury.

Under OKLA. STAT. tit. 85, § 5, no employer may discharge an employee for filing in good faith a claim for workers' compensation. To establish a prima facie case for retaliatory discharge under § 5, a discharged employee must show "employment, on the job injury, receipt of treatment under circumstances which put the employer on notice that treatment had been rendered for a work-

related injury, or that the employee in good faith instituted, or caused to be instituted, proceedings under the Act, and *consequent* termination of employment" Estrada v. Port City Properties, Inc., 158 P.3d 495, 499 (Okla. Civ. App. 2007) (quoting Buckner v. Gen'l Motors Corp., 760 P.2d 803, 806 (Okla. 1988)). To show "consequent termination" a plaintiff must produce evidence that gives rise to "a legal inference [that] the discharge was significantly motivated by retaliation for exercising one's statutory rights." Wallace v. Halliburton Co., 850 P.2d 1056, 1058 (Okla. 1993); see also Taylor v. Cache Creek Nursing Ctrs., 891 P.2d 607, 610 (Okla. Civ. App. 1994). A plaintiff need not meet a "but for" standard of causation for a successful § 5 claim; however, he must "present evidence that does more than show the exercise of [his] statutory rights was only one of many possible factors resulting in [his] discharge." Blackwell v. Shelter Mut. Ins. Co., 109 F.3d 1550, 1554 (10th Cir. 1997). Where an employee's allegations are sufficient to bring him within the section's protection, the employer is called upon to present an alternate reason for the employee's termination. Buckner, 760 P.2d at 807. If the employer meets its burden to articulate a legitimate non-retaliatory reason for terminating the employee, the employee bears the burden to show that the employer's reason was pretextual. Id. The Oklahoma Supreme Court has explained that this burden must be considered along with the employee's ultimate burden of persuasion to show retaliatory discharge:

> The ultimate burden of persuading the trier of fact that the employer retaliatorily discharged the employee for exercising statutory rights under the Act remains at all times with the employee. The burden of persuasion never shifts and the employee bears the burden of persuasion that the reason given for termination was pretextual. This burden merges with the ultimate burden of persuading the court that [he] has been the victim of retaliatory discharge. The employee may succeed in this, either directly by persuading the court that the discharge was significantly motivated by retaliation for [his] exercise of statutory rights, or indirectly by showing that the employer's proffered explanation is unworthy of credence.

Id.

8

Defendant argues that plaintiff cannot establish a prima facie case of workers' compensation retaliation, because plaintiff has not produced any evidence suggesting that he was terminated for exercising his rights under the OWCA. It is undisputed that plaintiff was employed by defendant and suffered an on-the-job injury on December 13, 2009. The parties disagree as to whether plaintiff has met his burden to show that he received medical treatment under circumstances putting defendant on notice that he was receiving medical treatment for an on-the-job injury at the time of his termination. Plaintiff asks the Court to credit his deposition testimony that he returned to the emergency room for follow-up treatment within his seven day medical leave for his on-the-job injury. However, plaintiff admits in his response to defendant's motion for summary judgment that his on-the-job injury occurred on December 13, 2009, Talmez terminated plaintiff's employment immediately after he called to report his second trip to the emergency room, and his employment was officially terminated on December 23, 2009. Dkt. # 40, at 2-3. For the purpose of summary judgment only, the Court will consider plaintiff's deposition testimony as sufficient evidence that he made a second visit to the emergency room within seven days of his on-the-job injury, because the Court may not make credibility findings when ruling on a motion for summary judgment. The Court will assume that plaintiff can establish the third element of a prima facie case of worker's compensation and can show that defendant was on notice that plaintiff did not return to work due to an on-the-job injury. However, the evidence is clear that plaintiff's employment was terminated on December 23, 2009, and the Court will not presume that plaintiff's employment was terminated within the seven day period following his injury.

Defendant's primary argument is that plaintiff has no evidence to support an inference that his employment was "consequently terminated" in retaliation for filing a workers' compensation claim. To establish the fourth element of his prima facie case of workers' compensation retaliation,

9

plaintiff must come forward with "evidence sufficient to support a legal inference that the termination was 'significantly motivated' by retaliation for exercising [his] statutory rights." Blackwell, 109 F.3d at 1554. The Tenth Circuit, interpreting Oklahoma law, has stated that "[a]lthough a plaintiff need not meet a 'but for' standard, [he] must present evidence that does more than show the exercise of [his] statutory rights 'was only one of many possible factors resulting in [his] discharge." Id. Evidence of temporal proximity between an on-the-job injury and the termination employment is not always sufficient to establish "consequent termination" and an employee will generally need to produce additional evidence, such as evidence of a pattern or practice of retaliatory conduct, to raise a legal inference that he was terminated for exercising his statutory rights. Taylor, 891 P.2d at 610.

Plaintiff's deposition testimony establishes that he believed the reason that defendant terminated his employment was that plaintiff could not return to work. The evidence shows that plaintiff was injured on December 13, 2009 and was terminated on December 23, 2009. Plaintiff assumes that defendant must have engaged in worker's compensation retaliation if it terminated his employment due to plaintiff's failure to return to work. Dkt. # 40, at 8, 11. However, plaintiff's assumption does not support a legal inference of workers' compensation retaliation. The Oklahoma Supreme Court has held that an employer does not engage in retaliation merely by firing an employee who is unable to work but, instead, there must be some evidence that the employee was fired for exercising his statutory rights. Bishop v. Hale-Halsell Co., Inc., 800 P.2d 232, 234-35 (Okla. 1990). Although plaintiff claims that his termination was improper under the employee handbook, it is clear that defendant terminated his employment for absenteeism. The employee handbook and Waller's deposition testimony show that the a store manager is not required to allow an employee three unexcused absences before terminating the employee, and "other factors" may

support termination for even one unexcused absence. Defendant's alleged non-compliance with the employee handbook does not support an inference that plaintiff's employment was terminated to prevent him from filing a workers' compensation claim. The summary judgment record, including plaintiff's deposition testimony and defendant's official records, show that plaintiff's employment was terminated due to his failure to return to work, and this fact does not automatically give rise to a legal inference that terminated plaintiff's employment to retaliate against him for the potential that he might exercise his workers' compensation rights.

Viewing the evidence in the light most favorable to plaintiff, the Court finds that defendant is entitled to summary judgment on plaintiff's workers' compensation retaliation claim. Defendant was on notice that plaintiff suffered an on-the-job injury on December 13, 2009 and that plaintiff was not permitted to return to work for seven days after he was treated at the emergency room for this injury. Plaintiff's employment was terminated on December 23, 2009, and this is beyond the seven day period during which he had a valid medical reason for failing to report to work. Plaintiff has produced no evidence that defendant discouraged him from seeking medical treatment or that defendant took any steps to prevent him from filing a workers' compensation claim. Plaintiff's employment was terminated after he notified Talmez that he made a second trip to the emergency room and plaintiff was allegedly advised not to return to work. However, plaintiff has produced no admissible evidence that would support an inference that plaintiff remained off work due to a valid medical reason related to an on-the-job injury. Plaintiff has clearly stated that he believed Talmez terminated plaintiff's employment because "[he] couldn't return to work." Dkt. # 40-1. This is not evidence of workers' compensation retaliation. At most, it shows that plaintiff's employment was terminated because he did not or could not report to work. There is no evidence that plaintiff threatened to file a workers' compensation claim or that defendant believed plaintiff would file a

workers' compensation claim, and the mere facts of plaintiff's injury and subsequent termination are not sufficient to show that defendant retaliated against plaintiff to prevent a potential workers' compensation claim.

**IT IS THEREFORE ORDERED** that defendant's Motion for Partial Summary Judgment and Brief in Support (Dkt. # 36) is **granted**. The only claim remaining is plaintiff's claim for unpaid wages under the FLSA.

**DATED** this 19th day of May, 2011.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT